IN THE UNITED STATES DISTRICT COURT W. DIST OF PA.

LINDELL TATE _____, The Plaintiff

V.

WIGGINS _____, Hearing Examiner
et al defendant

CIVIL COMPLAINT

18-230J

RECEIVED

NOV 15 2018

CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

# CIVIL COMPLAINT

## TABLE OF CONTENTS

I. Jurisdiction and Venue _1.
II. Plaintiff _____ 1.
III. Defendant _____ 2.
IV. The Facts _____ 5.
V. Steps OF Exhaustion _____ 8.
VI. Violations OF Law _____ 11.
VII. In Closing _____ 23.
VIII. Relief Sought _____ 25.

(Other References:)

. Amendment 8, 14, 1 of the U.S const
. 18 USCS 2241
. Dept of Corr inmate Handbook: Sect II H
. S.C.I Somerset Handbook Supplement: II D.
. DC-AM (Dept Policies): 008, 804
. United Nations special Rapporteur of the
. Human Rights Council

# CASE LAW

- Allemandi V. Munoz, U.S. Dist. Lexis 18311
- Estelle V. Gamble, 429 U.S. 97, 103 (1976)
- Farmer V. Brennan, 511 US 825, 824 (1995)
- Hewitt V. Helms, 459 US 460, 74L Ed 2d 675, 103 S ct 864
- Ingram V. Lane, US. Dist, Lexis 866 75 (2018)
- Taylor V. City OF Philadelphia, U.S. Dist (1998) Lexis 4295
- Johnson V. Wetzel, 2016 U.S. Dist Lexis 103074 (M.D. Pa, Aug. 5, 2016)
- Cook V. Olath med. Ctr., Inc, 2011 U.S.
- Hudson V. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 60 L. Ed. 2d 447 (1984)
- Edwards V. Balisok, 520 U.S 641, 117 S.Ct. 1584, 137 L.Ed. 2d 906 (1997)
- Johnson V. Wright, 412 F. 3d 398 (2nd Cir. 2005)
- Lee V. Downs, 639 F. 2d 559 (2nd Cir. 1979).
- Domino V. Texas Dep't of criminal Justice, 239 F. 3d 752 (5th Cir 2001).
- Salinas V. O'Neil, 286 F. 3d 827 (5th Cir. 2002)
- U.S. V. MarolF, 173 F. 3d 1213 (9th Cir. 1999)

ii

IN THE UNITED STATE DISTRICT COURT FOR THE W. DIST OF PA.

LINDELL TATE, The Plaintiff

v.

WIGGINS, Hearing Examiner

CARR, Corrections officer

ACHENICK, Grievance Coordinator

BURKE, P.S.A

McCLELLAND, Unit Manager

HYDE, Health Administrator

HAINSWORTH, Superintendent

TICE, Superintendent

CIVIL ACTION
COMPLAINT

# CIVIL COMPLAINT

## I. Jurisdiction & Venue

This court has jurisdiction to review this action under 42 USC §1983, 1992, 1997 (a), 1997 (c), and retains appropriate venue, being of the western district of Pennsylvania where the issue raised and this action did occur.

## II. The Plaintiff

The plaintiff, Mr. LINDELL TATE, is currently housed as an inmate

1.

in S.I.C Somerset, where the issue raised in this action did occur. The plaintiff strives to maintain positive adjustment as a model inmate in the D.O.C.

### III. The Defendant

1. Defendant WIGGINS is currently a disciplinary hearing examiner at S.C.I Somerset. His legal obligation is as a decision maker (over inmate misconducts) under color of state law.

2. Defendant CARR is a correctional officer at S.C.I Somerset. His legal obligation is to maintain institutional security at S.C.I Somerset under color of state law.

3. Defendant ACHENCK is the grievance coordinator at S.C.I Somerset. Her legal obligation as such is to receive inmate grievance's and to foward them to staff members, or to reject that grievance for various reasons under color of state law.

4. Defendant BURKE is a psychologist at S.C.I Somerset. His legal obligation as such is to evaluate inmates psychological wellness, and to give them aid if needed under color of state law.

5. Defendant MCCLELLAND is the RHU unit manager. Her legal obligation as such is to manage the daily functions of said unit, and to supervise under color of state law.

6. Defendant HYDE is the correction health care administrator at S.C.I Somerset. His legal obligation as such is to oversee and supervise

the daily medical functions of the facility under color of state law.

7. Defendant HAINSWORTH had been the superintendent at S.C.I. Somerset. Her legal obligation as such was to oversee and supervise the facilities daily functions under color of state law.

8. Defendant TICE is currently the superintendent at S.C.I Somerset. His legal obligation as such is to oversee and supervise the facilities daily functions under color of state law.

### IV. The Facts

1. On June 20, 2018, defendant WILKINS and CARR were conducting inmate disciplinary hearings and escorting inmates to and from such hearings. At appx 12:35 pm the defendants had entered into the dayroom area of HD pod (S.C.I Somerset RHU). After questioning defendant WILKINS, from behind my locked door, on why he displayed such unfair treatment at my misconduct hearing (where at he stated I would soon learn how things worked around here with him), he told me to "lick his ass". He than immediatly became hypersexual: He pranced about shamelessly exclaiming strong sexual obscenities, grinding his backside on inmates cell door, while comfessing that his prejudice as a decision maker during misconduct hearings was only in fact, because the inmates don't "lick enough Ass". He than partomimed as if lowering his pants and undershorts stating "I'll have my ass licked by each and everyone of you, that's how much hole time you'll have. I'll give y'all a day shorter for each lick you give me, who wants a crack at my crack"?

Defendant CARR is herefore listed under subcategory liability for he and defendant WIGGINS both shared calpable minds of defendant WIGGINS' indecent misconduct, and defendant CARR initially failed to report defendant WIGGINS misconduct, although both defendants were yet acting under color of state law.

2. The plaintiff as a result of the licentious prurience of defendant WIGGINS lecherous behavior, has suffered a severe bodily injury. [Even an embarrassing erectile dysfunction] which constitutes a protracting loss or impairment of the function of a bodily member L/J organ.

Your Honor, since the incident of June 20, 2018, the plaintiff continues to morn the loss of his ability to procreate. You can not imagine the fear that he suffers, now wondering if his condition will ever subside unto a full recovery. They say condition of a sexual trauma do in fact reverse [sometimes with the adequate corrective therapy], but he dreads the thought of being permantly less than a man should be. His fear alone, he's told, increases the probability of a delayed recovery, but it's already been so long since he develop a solid erection. Every time he seeks sexual pleasure (Through self pleasure) defendant WIGGINS charade is recalled to his mind, then nothing works.

Appx 90 days prior to defendant WIGGINS misconduct, he unfairly sanctioned the plaintiff too 90 days in the RHU, where cells are seven feet wide by ten feet long. The plaintiff leaves his cell three times per week for a shower of 10 minutes. He receives an hour of yard in a cage the same size as a standard dog kennel

cage. The plaintiff receives three meals daily, one in which is dinner that is served at 4:00 pm, fourteen hours before he receives his next at 6:00 am. In calling for an outright ban on solitary confinement beyond fifteen days, a United Nations' Special Rapporteur of the Human Rights council determined that such confinement may cause "Sever mental pain or suffering" and amount to torture or cruel, inhuman or degrading treatment. (Johnson v. Wetzel).

During his 90 days of RHU sanction time for an assault he clearly did not commit, the plaintiff's biological father passed away adding to his torment, yet because he was in the RHU, he could not so much as enjoy regular phone use to share in his family's grief. What therefore shattered him was defendant WILLIAMS suggestion that all these things had befallen him due to his failure to please him with oral sex in his anus or other private parts. It's not fair. Please order that camera video footage beheld for litigation.

(B) The plaintiff informed the S.C.I Somerset medical team through "inmate sick call", of his new and embarrassing physical ailment to befall him on (7-8-18) while acting under color of state law, S.C.I Somerset medical team ignored the plaintiff's need for help, showing their loyalty to the D.O.C and defendant's WILLIAMS and CARR.

Not giving up on his hopes of finding a cure for his ailment, the plaintiff then submitted another "inmate sick call", to S.C.I Somersets medical department on (7-11-18) the medical department continued

5

to shoo him away, forcing the plaintiff to submitt an inmate grievance on (7-12-18). On (7-17-18) after another 5 day delay, the S.C.I Somerset medical department did diagnose the plaintiff with a psychosomatic condition, stating the problem he'd been having was in fact mental although it affected him physically, and that he should see the psychology department to began working himself back to normal, and over time he'd be ok. The medical department did take five dollars for his diagnoses and treatment.

(c) The plaintiff made known to the S.C.I somerset mental health department through "inmate request to staff member" that he would like to speak with a male in the Psych dept about his embarrassing physical ailment, psychological unstableness, and the haunting memory of the perverted actions and words of defendant KILBURNS. Nonetheless, the plaintiff's request to speak with anyone went unanswered.

The plaintiff then submitted a second "inmate request to staff" too the psychology department in desperation asking to speak with anyone, male or female in hopes of finding a cure for his psychological trauma and physical ailment. However, s.c.I somerset psychology department, while performing under color of state law, continued to express their loyalty to the D.O.C, and defendants KILBURNS and CARR, by ignoring the plaintiff's request, forcing him to submitt an inmate grievance on (7-12-18). S.C.I somerset psychology department, even after the plaintiff grieved, continued to not respond to his act cry for help. Through several other request to the psychology dept, with his emotional distress mounting, the

6

plaintiff expressed thoughts of life not being worth living. The psychology dept then finally expressed in return that the plaintiff should follow the grievance system if he felt it necessary.

With all that had been surrounding the plaintiff at his time of request (The untimely death of his father, being forced to battle with his own mind, while being confined within the tortureus restricted housing unit, and being offered his performing of oral sex in exchange for receiving a fair hearing or time that's not excessive (by defendant WILKINS own admission), the plaintiff really needed the psychology dept.

(D) On 6-20-18, hearing examiner WILKINS confessed before HD pod [The housing unit the plaintiff had been housed on] that if inmates wanted for hearings that are fair would have to [had] perform [ed] oral sexual favors on him. On 7-4-18, the plaintiff wrote an "inmate request to staff" to PRC (Program Review Committee) for a fair rehearing upon the knowledge that his first hearing was contrary to impartiality according to WILKINS own affirmation. The plaintiff gave the (Program Review Committee) a reasonable amount of time to respond (12 business days) to his "inmate request to staff", before filing an inmate grievance. The [S.C.I SMR] staff conspiratorially shooed the plaintiff away ignoring him so that the deviate's WILKINS sins might not be revered.

Since defendant WILKINS actions, [S.C.I SMR] inmates began to receive hearings before a fair hearing examiner by [S.C.I SMR] own dictations. The plaintiff grieved that he also should be EQUALLY PROTECTED as other inmates who are similarly

situated before S.C.I Somerset's hearing examiners and not forced to bear an arbitrarily deprivation of LIFE LIMB[N]LIBERTY simply because the recusal of extrajudicial ~~WILLIAMS~~ occured after the plaintiff's hearing. IF PRC supposed that an arbitrator who was actually in fact fair, discretional, impartial, responable, equitable, unambivalent, and unequivocal, when adjudicating the misconduct of others? He himself would have not been recused.

. Furthermore, the [Pennsylvania Department OF Corrections] inmate handbook guarantees that one will not be retaliated against for reporting an incident of sexual harassment or for providing witness testimony, yet the plaintiff has experienced a delay in medical treatment, in which he'd been forced to grieve. He has also been totally denied his speaking with anyone in the psychological department (Even after he grieved). And he's been denied the fair chance in front of a hearing examiner who's not ~~showed~~ showed an impartial (Judgement).

## V. Steps OF Exhaustion

1. The plaintiff submitted an inmate grievance # 743392 against hearing examiner ~~WILLIAMS~~, defendant, and although said grievance was denied in accordance with DC-ADM 008, and fowarded to the PREA (Prison Rape Elimination Act) the plaintiff appealed said grievance to the highest level to fullfill the exhaustion requirements for litigation.

8

2. The plaintiff submitted grievance # 744568 against PREA for their lack of urgency in interviewing the plaintiff for an initial statement, and their inability to aid him in any way or provide him relief. Said grievance was also appealed to it's highest level to fullfill the exhaustion requirements for litigation.

3. The plaintiff submitted an inmate grievance #745038, against officer CARR, defendant, for the lack of action he'd taken against defendant WILLIAMS, as he propositioned the plaintiff for sexual favors and paraded around shamelessly. The plaintiff appealed said grievance to it's highest level to fullfill the exhaustion requirements and litigation.

4. The plaintiff submitted an "inmate request to staff" marked "exhibit A" to S.C.I Somerset psychology department for care concerning the sexual trauma and other hardship suffered as a result of defendant WILLIAMS actions, and perverted propositions. Do to no response, the plaintiff submitted a second "inmate request to staff" marked "exhibit B". Still the S.C.I Somerset psych dept remained unresponsive. The plaintiff then submitted a grievance #746517 to the highest level of the appellate process to fulfill the requirement of exhaustion for litigation. He also submitted several other request to the [S.C.I SMR] psychology department asking for their aid in which one was responded to starting, Mr TATE, we encourage you to follow the grievance system if you feel that is necessary. Those request are marked "exhibits C D E.

9

5. Submitted by the plaintiff was an "inmate sick call" marked "exhibit G" to the [S.C.I SMR] medical department (relating to the producing of a cure to his ailment). The medical department ignored the plaintiff's cry for help, and he submitted another "inmate sick call" marked "exhibit H. Do to no response from the [S.C.I SMR] medical department, the plaintiff then submitted an inmate grievance # 746520 to it's highest level to fulfill the exhaustion requirements for litigation.

6. Submitted by the plaintiff had been a "inmate request to staff" to PRC (Program Review Committee) for a fair rehearing and rights to be equally protected. Do to no response, the plaintiff then grieved # 746520 to it's highest level to fulfill the exhaustion requirements for litigation.

7. The plaintiff grieved defendant BURKE of the psychology department submitting grievance # 751123, for his continued violating of the plaintiff's 8th Amendment rights, and his attempt to evade the plaintiff on a wellness round. The plaintiff did grieve to the last and final level for fulfilling the exhaustion requirements for litigation.

Your Honor, the plaintiff continued to struggle with severe psychological issues (The same as he expressed in several request to staff and grievance while housed in the RHU) stemming from the sexual misconduct, threats, and propositions of defendant WIGGINS, as well as the lost of parole do to his unfair and unconstitutional treatment at his misconduct hearing, coupled with the death of his father.

After his releast from the RHU, the plaintiff had been able to use Freedoms of being able to now knock on the door of his unit psychologist and speak with her. On (10-19-18), the plaintiff had been diagnosed with PTSD, Anxiety disorders, and depression, and now takes Sertraline (Zoloft) and Hydroxyzine for psychological stability. The plaintiff, (by the hands of the defendants) is now by the ADAAA standard, a disabled person.

## VI Violations Of Law
### (a) Sexual Harassment / Abuse

"The Eighth Amendment secures an inmates right not to be sexually abused by state employees while in confinements. The court role is... only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the [plaintiff] (see= Ingram, internal quotations and citations omitted; brackets original).

"The term serious bodily injury means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of a bodily member, organ or mental faculty." 18 USCS 2241 (4) (a prisoner must show serious bodily injury to substantiate a sexual abuse/harassment claim in accordance with the statute).

Allegation of a prisoner by a corrections officer may state an Eighth Amendment claim under §1983, so long as two elements are met. The objective element requires severe or repetitive sexual

11.

abuse of an inmate by a prison officer. The subjective element is
whether the official had sufficiently culpable state of mind.
(see: Allemandi ). Defendant WILLIAMS, thus, violated Amendment 8

Defendant WILLIAMS sexual abuse/harassment, under color of state
law, thus satisfies the requirements of an Amendment 8 violation
(under the state constitution).

Furthermore, Section II.D. of S.C.I Somerset's inmate handbook
supplement states: S.C.I Somerset follows the department of corrections
policy and Philosophy of ZERO TOLERANCE for sexual abuse or sexual
harassment of inmates. Anyone who engages in, fails to report, or
knowingly condones sexual harassment of sexual abuse of an inmate
shall be subjected to disciplinary actions and may be subjected to
criminal prosecution.

The department of corrections has a ZERO TOLERANCE regarding
sexual misconduct, personal injury, disease, property damage,
harassment or punitive interference with the daily functions of
living towards inmates.

Also section II.H. of the inmate handbook of Pennsylvania
department of correction states:

1. sexual harassment of inmates is prohibited. Sexual harassment
is defined as sexual advances, request for sexual favors, or verbal
comments or gestures of a sexual nature to an inmate by staff
member... including demeaning references to gender sexually
suggestive or derogatory comments about body or clothing or

12

obscene language or gestures.

4. Sexual abuse of inmates is prohibited . . . sexual abuse of an inmate by staff member . . . includes any of the following acts with or without the consent of the inmate.

6. Any attempt, threat, or request by a staff member . . . to engage in activities described in paragraph 1)-5) of this section.

(b) (Liability (OF Defendant #2).

Defendant CARR is "liable under the Eighth Amendment: (1) where the supervisor established a policy, custom, or practice that caused the harm (2) where the supervisor personally participated in the constitutional violation. [L]iability may attach if they with deliberate indifference to the consequences established and maintain a policy, practice or custom which directly caused the constitutional harm. Second, a supervisor may be personally liable under §1983 if he participated in violating the plaintiff's right, directed others to violate them, or as the person in charge had knowledge of and acquiesced in the subordinates unconstitutional conducts. Failure to claims- Failure to train, Failure to discipline, or as in the case here, Failure to supervise - are generally considered a subcategory of practice liability "Ingram.

(c) Deliberate Indifference

Both defendant WILLIAMS and CARR created an Amendment 8 and 14 violation (of the United States Constitution) under color of state

13

law, by both having knowledge directly related to the sexual harassment and/or abuse; and secondly, both, intentionally failed to prevent and discontinue said misconduct (see=Estelle, Farmer).

### (d) Liberty Interest:

Both defendant WILLIAMS and CARR created an Amendment 8 and 14 violation (of the United States Constitution) liberty interest, under color of state law, by subjecting the plaintiff liberty to be free of sexual abuse/harassment to arbitrary abridgment of due process of law, in that, said defendants purported and/or acquiesced the [self made] promulgation of sexual favors to influence a fair process of law. (see=Hewitt, liberty interest test).

"[I]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 60 L. Ed. 2d 447 (1984)

### (e) Due Process

"Procedural defects in prisoner's disciplinary hearing may be challenged under §1983, and a successful plaintiff is entitled to at least nominal damages if it's shown that insufficient hearing procedures violate due process, without also proving the result of the disciplinary hearing as a substantive matter, was wrong, requiring the reinstatement of good time credits, id. 520 U.S. at 645; claims alleging only defective procedures and not seeking reversal of disciplinary board decision and reinstatement of good time credits are not barred by the standard under Heck

14

Humphrey prohibiting §1983 action that would necessarily imply the invalidity of conviction or sentence, without a prior showing that the same has been invalidated (Edwards v. Balisok, 520 U.S 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997)

Defendant ACHENCK violated due process law, thus, violated Amendment 14 (of the United States Constitution), under color of state law, by attempting to evade the plaintiff's request for remedy, in that, said defendant referred and fawarded the plaintiff's inmate grievance of sexual harassment/abuse to PREA, in accordance with DC-ADM 008, even against her own personal knowledge that PREA acts as a disciplinarian, and not as a judge or tribunal able to grant reliefs sought by victims. Please take the following points into careful consideration.

1. The inmate grievance blatantly demands on it's face "state all relief that you are seeking" (DC-804 pt. I.A).

2. The department of correction inmate handbook, sect II.H.2, favorably promised at one time that "if you believe you have experienced sexual harassment by staff, inmates . . . - you must report it as soon as possible. You may report it to the unit manager and or submit a grievance in accordance with DC-ADM 804" sect II.H.

3. The department of correction has already established a history of attempting to sabotage and abridge due process exhaustion requirements (see- Ingram). However, defendant ACHENCK, disacknowledged the plaintiff's inmate grievance

15

intentionally-as- the defendant in depriving the plaintiff of due process remedies of exhaustion. (The Ingram case is as recent as May-22 this very year, Your Honor; and.

4. An inmate grievance may cast liability upon a grievance officer who is personally involved in the violation [being the complaint of sexual abuse/harassment], because he is confronted with a situation he can remedy directly "But fails to perform (see= Ingram; Brackets original).

### (f) Cruel and Unusual Punishment

The Eighth Amendment secures an inmate from cruel and unusual punishment of any kind while confined. In Hill v. Dekalb Reg'l Youth Det, Hill provides that you have merit if you receive no physical examination nor medical assistance yet even a "lay person" can see that you are in fact in need of "serious medical attention"; if you can prove that the medical care provided was totally inappropriate as a bandage for a gaping stab wound, Scott, Spruil, and Meloy agree that your case will qualify, as Brown confirms that a medical delay of treatment / care unto a serious need also bears weight. [All cases] where medical attention is (Denied) altogether are 8th Amendment violation of cruel and unusual punishment. Thus, the medical department of S.C.I Somerset violated the plaintiff's 8th Amendment rights in delaying his treatment / care of his serious need. (see 18 USCS 2241 (4) for serious bodily injury.

After S.C.I Somerset medical department delayed the plaintiff's medical attention after ignoring two "inmate sick call" slips,

Forcing him to grieve, the did finally see and diagnose him with a psychosomatic condition on (7-17-18) but showed a deliberate indifference to his serious medical need by not fowarding that need to the psychology department, who are qualified to aid him. (see= Farmer V. Brennan), where it states, "finding that a deliberate indifference to medical need is shown, when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.

   S.C.I Somerset's psychology department denial of medical / psychological care did in fact have a [profound][protracting] affect on the plaintiff's recovery from the ailment of his mental faculty, forcing him to fight through PTSD, Anxiety disorders, and depression. These issues also had a protracting affect on his bodily member/organ.

   (Estelle) states that before raising claims that you have been denied medical attention, be sure to consider.

   A- Does your claim constitute a serious need of medical attention which is to say.

   1) A doctor or even a patient can see a need for a medical diagnosis or treatment

   2) Does your situation affect your daily activity? and

   3) Do you experience chronic or serious pain?

B- can you prove a deliberate indifference which is

1) officials know of your need yet failed to attend to it.

2) officials intentionally failed to attend to your need they know of.

C- was the medical treatment or lack there of the cause of your serious need?

Prison officials who disregarded risk to prisoner's health by denying treatment recommended by prison doctor held liable under Eight Amendment. Johnson V. Wright, 412 F. 3d 398 (2nd cir. 2005)

With the combination of the death of a parent, lost of parole, and feeling like he was being forced into performing oral sex for fair treatment and maybe even his freedom, while being confined within the RHU. Even a lay person could tell there was a need for psychological treatment.

Defendant #4 BURKE, of the S.C.I Somerset psychology department violated the plaintiff's Eight Amendment rights when he showed a deliberate indifference to the plaintiff's menagrie of "inmate request to staff", asking for the psych dept's aid in dealing with the psychosomatic condition he'd been fighting through, and the PTSD, Anxiety disorders, and depression that had him near killing himself.

The plaintiff expressed through "inmate request to staff", that the lost of his father, lost of his freedom, feeling like he [is] being forced

18

into oral sex, and now feeling as if being treated as a pariah because of his reporting of WILLIAMS and CARR, all seemed to be overwhelming at times throughout the day and he was going through a struggle with not killing himself.

Even with all this information, defendant BURKE, respond to an "inmate request to staff" stating "Follow the grievance system if you feel it's necessary.

While doing a monthly wellness round, defendant BURKE tried to aviod the plaintiff's cell with evil and malicious intent (as shown on video footage). The plaintiff yelled for defendant BURKE, who turned and came to his cell stating "I care not to speak with you before turning away.

Prison officials have an obligation to ensure that inmates receive basic needs including "adequate food, clothing, shelter, and medical care and must take reasonable measures to guarantee [their] safty. Courts have held that "deliberate indifference" to basic human needs of a prisoner will be considered a violation of the 8th Amendment [Estelle.

In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts of omission by prison officials is deliberate indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to aviod the harm (Allemandi. Thus, defendant BURKE violated the plaintiff's rights while under the color of state law.

19

Prisoners must be protected from suicide and self-injury. Lee v. Downs, 639 F. 2d 559 (2nd Cir. 1979).

Just as a "serious medical need" may exist for a physical condition, so may a "serious medical need" exist for psychological or psychiatric treatment. Domino v. Texas Dep't of criminal Justice, 239 F. 3d 752 (5th Cir 2001).

Wherefore, defendant BURKE violated the plaintiff's 8th Amendment rights (1) He failed to give the plaintiff the basic human needs awarded to him by America and her constitution, when he faile and refused to give him medical/psychological treatment that had been recommended by a prisond doctor. (2) defendant BURKE, knowingly left the plaintiff a danger to substantial serious harm, or even death.

Defendant McCLELLAND, the RHU unit manager worked in very close quarters with the psychology department, even defendant BURKE. She had been comfronted with grievance #746517 and 751723. She (1) had direct knowledge of the plaintiff's diagnoses and recommendation from the medical department referral to be seen by the psych department (2) of defendant BURKE's continual constitutional violating of the plaintiff's 8th Amendment Rights, and was even encouraged to view video evidence of such misconduct.

"In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted

with a situation he can remedy directly." (Ingram.

Furthermore, Your Honor, defendant MCCLELLAND had been notified of defendant BURKE's constitutional misconduct, and the on camera evidence of that misconduct. The plaintiff did in fact through inmate grievance make defendant MCCLELLAND aware that (i) litigation was imminent, and (ii) said video evidence would need to be perserved for that litigation, so video evidence spoilation did not occure. Your Honor, the plaintiff ask that if spoilation does occure, the courts award the plaintiff with summary judgement against defendant MCCLELLAND and BURKE who violated his rights while under color of state law.

Defendant HYDE, as the health aministrator, violated the plaintiff's rights while under color of state law, when he had knowledge of the plaintiff's pysical and mental medical ailment through "inmate sick call", and a inmate grievance.

Defendant HYDE did delay the treatment to the plaintiff's serious bodily injury that sustained the protracting impairment of his bodily member/organ and mental faculty.

Even after delay and diagnoses, defendant HYDE did prevent the plaintiff from receiving treatment from personnel capable of providing him with proper care (Estelle. Thus, defendant HYDE violated the plaintiff's 8th Amendment rights.

Defendant HYDE's failure to train, failure to discipline, and failure to supervise are generally considered a subcategory of policy;

21

practice liability (Ingram.

(g) Equal Protection/Due Process
Redress of Grievance

Defendants HAINSWORTH, TICE, and ACHENCK, violated the plaintiff's Amendments 8,14 and First rights by thire denial of his request et a Fair misconduct re-hearing, upon the knowledge they'd received of defendant WIGGINS clear gestures of a sexual nature, and his open confession that inmates don't "lick enough ass" for a fair hearing or sanction.

Defendant WIGGINS was recused of his hearing examiner duties, and ultimately removed from the facility altogether, thus, by S.C.I Somerset's own dictation, violated the plaintiff's "EQUAL PROTECTION" and "DUE PROCESS" rights

Defendant HAINSWORTH, TICE, and ACHENCK, failed to allow the plaintiff to REDRESS his GRIEVANCE, stating his issue had been one that [could not be grieved] but only addressed through (DC-ADM 801), which only addresses a misconduct's innocence or guilt and the reasonableness of the sanction handed down. (administrative regulations cannot sanction the violation of constitutional or statutory rights. U.S. v. Marolf, 173 F. 3d 1213 (9th Cir. 1999)

The plaintiff commonsensed that a hearing in front of one who had been extrajudicial, and was recused of his duties for his [actions] and his open confessions that his prejudice while conducting hearings was in fact because inmates did not grant him oral sex

22

in his backside, is not a hearing at all. Thus, defendants, ~~TICE HAINSWORTH~~ and ACHENCK violated the plaintiff's ~~First~~, Eighth, and ~~Fourteenth~~ ~~Amendment~~ rights.

Furthermore Your Honor, the defendants had been confronted with grievances of the plaintiff's 8th Amendment rights being violated, and failed to remedy those violations while performing under color of state law.

### (h) Emotional Distress

"[A] plaintiff must show that he suffered severe emotional distress as a result of conduct by a defendant as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilize community" see=Taylor.

Damages for emotional distress may be appropriate when suffering sleeplessness, anxiety, stress, marital problems, and humiliation. Salinas v. O'Neil, 286 F.3d 827 (5th Cir. 2002)

Your Honor, both my sworn testimony of the preceding facts and the video footage of defendant ~~WILLIAMS~~ misconduct behavior, while under color of state law, was in blatant disregard of ~~Amendment~~ 8 (of the United States Constitution).

### VII In Closing

Your Honor, it is true that prisoners are in a disfavored class among other Americans, and their constitutional rights and

23

Protections are minimized, notwithstanding 42 USCS §1983 appropriates a prisoner's rights to civil suit action against any citizen who commits an unlawful act against him under color of state law. Your Honor, take into consideration how: A prisoner, though he may prove a constitutional violation against him, he most prove a sufficiently grievous loss, and more then just a unilateral hope (Kentucky D.O.c. V. Thompson); for he is afforded a minimal due process of law (ibed), insomuch that [Even in the case at bar] to prove an 8th Amendment sexual harassment/abuse claim, he must show "serious bodily injury", now maybe certain routine discomforts run within the expectation of a sentence; yet in this same nation, our American court has unleashed with-emancipation and certain conscienceless, unruly bullies upon her. Detainees, in that, as the courts set the bar so high against American prisoners, for presentian reviewable our constitution does in fact tolerate a good deal of unconstitutional practices, so long as those atrocities are solely upon American prisoners and practised under color of state law. Your Honor, what shall it profit me to raise slanderous accusations against the federal constitution? And what kind of American would even desire a constitution protection to practice evil against another altogether? Prisoners now relate to suffering cited in the bill of Indictment, against King Henry, in the Declaration of Independence. We need more help. Furthermore, in a case of sexual harassment/abuse, where the victim intends to sue, and there is video evidence-as in the standing case- A party must notice to reserve that evidence or knowledge that such evidence is relevant to litigation (see: Cook V. Olathe Health System, U.S. dist. 2011 Lexis 10206) and such party cannot be sanctioned in accordance with F.R. CIV.

24

P 26 and 37 unless they receive notice, or should suspect litigation. The inmate grievance system allows a grievant space to notify and request that the institution reserve video evidence for trail. but PREA does not.

## VIII   Relief Sought

1. $ 1,600,000.00 in examplary /punitive damages. 200,000.00 For each defendants wrongful, illegal, and or unconstitutional actions. .

2. $ 250,000.00 in general damages. It is common knowledge of D.O.C officials that a guilty verdict of a misconduct could mean lost of parole and/or other privileges awarded to inmates for good behavior.
   The lifestyle of the RHU is in fact a significant difference from general population.
   Sexually harassing, taunting, and threating an individual, then not treating that individual for the pain, suffering, and psychological damages caused by those very action, could only lead to the expected psychological issues the plaintiff now suffers from.

3. $ 500,000.00 in consequential /special damages, for the plaintiff's inability to procreate without the proper therapy, and /or medication and for the mental impairment that affects his major life activities, that had been caused by the defendants actions; for the plaintiff now by the ADAAA standered qualifies as a disabled person. The plaintiff had no prior record of any mental health issues before he had been violated.

4. $ 500,000.00 in Psychological [sexual] trauma

5. $ 500,000.00 in mental Anguish/emotional suffering.

6. The plaintiff is seeking to have misconducts Numbered D139800 and D139748, which defendant WILLIAMS arbitrarily ruled upon be expunged.